## L. H. SLAUGHTER et al., Respondents, v. GEORGE W. ELLIOTT, Appellant.

### St. Louis Court of Appeals, May 25, 1909.

1. **CONTRACTS: Agency: Instructions.** In an action against a husband and wife for a commission alleged to have been earned by plaintiff in trading the real estate of the defendants, where the husband was the agent of the wife only for the purpose of inspecting the goods received in the trade, in the absence of evidence showing authority, the wife was not bound by an alteration, which the husband signed, in the contract for the trade; an instruction so declaring was improperly refused.

2. ————: **Alteration of Contract: Real Estate Commission.** Where a contract for the exchange of real estate for a stock of goods provided that the purchaser of the goods had a right to inspect and approve or reject the merchandise before closing the trade, and afterwards the parties signed a statement on the back of the contract altering its terms in relation to the payment and amount of goods to be received but providing as follows: "Otherwise this agreement remains as written on opposite side of this sheet;" this did not alter the contract in respect to the inspecting and approval of the goods by the purchaser.

Appeal from Wright Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*F. M. Mansfield* for appellant.

First, the invoice, approval and acceptance of the merchandise by the defendants as a part of the contract price of their farm were conditions precedent to the plaintiffs' right to recover on the contract. Smoke Preventer Co. v. St. Louis, 205 Mo. 242; Williams v. Railway, 112 Mo. 488; Chapman v. Railway, 114 Mo. 549; Thomas v. Ramsey, 47 Mo. App. 99; Monks v. Miller, 13 Mo. App. 363; McCormick v. St. Louis, 166 Mo. 327; Williams v. Railway, 53 Mo. 487; Del Bondio v. Packing Co., 79 Mo. App. 465; Nofsinger v. Ring, 71 Mo. 149; Gratiot Street W. H. Co. v. Wilkinson, 94 Mo. App. 528. Second, the alleged contract upon which plaintiffs' action is based is not a contract of sale, but only an executory contract to sell upon conditions, and the sale would not be consummated until the defendants accepted the goods as part of the purchase price of their farm. Thomas v. Ramsey, 47 Mo. App. 99; Rogers v. Rehard, 122 Mo. App. 44.

*E. H. Farnsworth* and *P. T. Allen* for respondents.

GOODE, J.—Plaintiffs compose a firm of real estate agents doing business in Mountain Grove, Missouri. Defendants are husband and wife whom the petition alleged owned certain lands in Wright and Texas counties which they employed plaintiffs to sell or exchange for other lands or for merchandise at the price of $9,500, agreeing to pay plaintiffs for their services five per cent on the first thousand dollars and two and one-half per cent on the balance; plaintiffs say they advertised the lands for sale or exchange pursuant to the

agreement and on the first of July, 1907, found a purchaser in J. S. Harper, who agreed to buy the farms and pay defendants' said 'price in cash and merchandise. Harper was accepted as a purchaser by defendants, was ready and willing to take the lands on the terms and at the price alleged, plaintiffs have performed the service they were to render for the commission stated and are entitled to it, the amount being $262.51, for which sum they pray judgment. The answer denied generally the statements of the petition and stated as follows: defendants, at the special request of plaintiffs, entered into a contract with J. S. Harper for the sale of the lands mentioned; Harper and plaintiffs knew defendant G. W. Elliott had been engaged in farming and had no knowledge of mercantile business, and so knowing, in order to induce defendants to enter into the contract, falsely and fraudulently represented the general stock of merchandise mentioned in the contract was a good and clean stock and in good merchantable condition; these representations were false and made with the purpose and intent to defraud and cheat defendants; the stock instead of being in good merchantable condition, was old, shelf-worn, wet and of little value; the contract was signed and entered into on the express condition it was not to be binding on either party until defendant G. W. Elliott had accepted, approved and inspected the goods; he never approved or accepted the stock, but when inspected he found it was composed of remnants of five different stocks of merchandise, and was, as stated, not in good merchantable condition, but shelf-worn, wet, damaged and of little value; upon discovering the quality and condition of the merchandise, said Elliott rejected it as he had a right to do under the contract. The contract referred to in the answer was not the one employing plaintiffs to act as agents for the sale of defendants' lands, but one drawn up and executed pursuant to a deal plaintiffs had arranged be-

tween defendants and J. S. Harper, of Nevada, Missouri. It will be copied:

"June 24, 1907.

"This agreement made and entered into by and between Geo. W. Elliott and Estella Elliott of Mt. Grove, Mo., parties of the first part, and J. S. Harper, of Nevada, Mo., party of the second part: Witness, that for and in consideration of the sum of $9,500 to be paid in the manner hereinafter mentioned, the said parties of the first part have sold to the said party of the second part, three farms located and described as follows: (Description omitted). The said second party is to assume two incumbrances on said land, one for $700.00 and one for $800.00 leaving an equity of $8,000.00.

"In consideration of the above the said second party hereby sells his entire stock of general merchandise, consisting of groceries, dry goods, ladies' and Gents' furnishings, notions, clothing, millinery, shoes, etc., including all merchandise in the building to the said first parties, also the fixtures. The fixtures to be taken at $200. The merchandise to be invoiced at the wholesale list price as per cost mark. If there be no cost mark to indicate the cost of any article, then if first and second parties can not agree on the original cost thereof, then each party hereto shall choose a disinterested party and these two shall choose a third, if they cannot agree, and any two of them shall decide as to the original cost of said merchandise. The said party of the first part is to have $500.00 worth of merchandise free, which shall cover any and all discounts and rebates for all causes whatsoever and the difference between the goods and the $8,000 to be paid in cash.

"The said parties of the first part agree to furnish abstract to the said second party before this contract is completed, showing good title to the lands herein mentioned, which shall be free and clear of any and all incumbrances except herein mentioned which are to be

assumed by the second party hereto. First party to pay all interest to date and give possession immediately upon completion of this contract.

"This deal is this day closed, subject to the inspection and approval of the merchandise by the said first party, and after the said goods are approved by the said party of the first part and accepted, warranty deeds from said first party conveying the above described lands are to be placed, together with this contract, with the First National Bank of Nevada, Missouri, with the authority to deliver the same to the said second party when this contract is completed, and also deliver bill of sale of goods to said party of the first part upon the completion of this contract.

"Said second party is to make affidavit in Bill of Sale that he is the legal and absolute owner of the goods and that there are no liens or encumbrances of any nature whatever against them. And is also to deposit the sum of $500.00 with copy of the contract and the deeds with authority to the first National Bank of Nevada, Missouri, to deliver the same to the party of the first part as a forfeit if the said party of the second part fails or refuses to carry out the contract as herein written; but when the said second party has fulfilled his part of the contract, the said $500 is to be returned to the said second party. The deeds of the party of the first part are to be deposited in lieu of $500.00 forfeit to be delivered to said party of the second part upon the same conditions. Invoice of goods to begin on or before the first day of July, 1907, and to be continued until completed.

"Witness whereof we have hereunto set our hands and seals.

"G. W. ELLIOTT,
"ESTELLA M. ELLIOTT,
"J. S. HARPER."

On the back of the contract was the following indorsement:

"Nevada, Missouri, July 1, 1907. It is hereby agreed by both parties hereto that date of invoice is extended to July 2, 1907.

"It is further agreed that in (the) event the stock of goods invoice over seven thousand five hundred dollars ($7,500) that the first party is to select any goods in stock he desires and the second party is to reserve all goods in excess of $7,500.

"In other words, second party is to pay first party one thousand dollars in cash and balance in merchandise—otherwise this agreement remains as written on opposite side of this sheet.

"GEORGE W. ELLIOTT,
"JOHN S. HARPER."

There was testimony to prove plaintiffs were employed to dispose of defendants' lands by sale or trade and arranged for a trade with Harper, whom plaintiffs brought to Mountain Grove, near where defendants resided, introduced him to Mr. Elliott and the two agreed on the contract for the trade, which was drawn up in plaintiffs' office in Mountain Grove and taken out to the farm where Mrs. Elliott lived, for her signature. Wheeler, one of the plaintiffs, and Elliott and Harper, then started to Nevada, where the goods were to be invoiced. Elliott having no expert knowledge of the value of merchandise, stopped in Springfield, Missouri, and induced Claude E. Mack, to go with him to Nevada to assist in examining and valuing the goods. According to the testimony for plaintiffs, the deal was closed and the papers relating to it, including the contract, were put in the First National Bank, pursuant to the terms of the contract. Before this occurred Elliott had declined to conclude the deal, and he and Mack had gone to the station and boarded a train to go home, having

made a proposition to Harper which the latter refused
to accept.    Wheeler followed them and before the train
left the station boarded the car, notified Elliott Harper
would accept his proposition, Elliott and Mack left the
train and further negotiation ensued which ended favor-
ably.    The new arrangement which followed the prop-
osition Elliott had made to Harper, is shown by the
indorsement on the back of the contract extending the
date of the invoice to July 2d, and agreeing if the stock
amounted to over $7,500, Elliott was to select what part
he desired and Harper should retain the goods in ex-
cess of said amount.    The testimony for plaintiffs would
warrant the inference that after this change in the con-
tract, the deal was closed and Elliott and Harper de-
posited the papers in the First National Bank, for de-
livery of the deeds to Harper and the bill of sale to de-
fendants when certain things were done.    The testi-
mony for defendants and some introduced by plaintiffs,
tended strongly to prove the stock was of little value,
the cost marks on the articles were largely in excess
of the wholesale prices of them, the goods were old,
shelf-worn, had been rained on, and some of the boxes
contained different articles from those Harper had said
were in them, that the stock was worth only from forty
to sixty per cent of its original cost, and Elliott did not
discover the real condition and value of the goods until
after the alteration of the contract, not having pre-
viously examined it.    There was evidence to prove the
deal was not closed.    Mack swore Harper said he would
not turn over the keys to Elliott until the invoice was
finished, and said this after the change in the contract.
In the course of the invoicing, certain boxes which Har-
per said contained blankets were found to have blank-
ets on top and millinery articles beneath; whereupon
Elliott said he would not go on with the deal, and
would have nothing more to do with it.    Elliott's tes-
timony was substantially to the same effect.    The lat-
ter swore regarding the incident of depositing the pa-

pers in the bank, they were not put there pursuant to the contract or any agreement between him and Harper, but under these circumstances: after the contract had been changed and the invoice was about to begin, he (Elliott) told Harper he would put the papers in the bank until the matter was settled; whereupon Harper said he would go with Elliott to the bank. When they went into the bank Harper said the officers were very busy and he would take the papers. Elliott, thinking Harper was honest, assented, handed him the papers and they were left with the bank for safekeeping only. The effect of Elliott's testimony is an impression that Harper seized upon Elliott's wish to deposit his papers in the bank for safekeeping, as an opportunity to create the appearance of their having been put there under the stipulation in the contract; a circumstance that would indicate the contract was completed instead of being abandoned and repudiated as Elliott contends. At the conclusion of the evidence defendants requested and the court refused to declare the verdict must be in their favor; refused also to grant the following declarations of law requested by defendants:

"The court declares the law to be that if the court finds from the evidence that the contract introduced in evidence by the plaintiffs was altered or changed after it was signed by her, Estella Elliott, without her knowledge or consent, then she is not bound by the same, and the finding will be for the defendant, Estella Elliott.

"The court declares the law to be that there is no evidence in this case showing or tending to show, that the defendant Estella Elliott, had any knowledge of or consented to the alteration of said contract.

"The court declares the law to be that the fact of the amendment or addition made to said contract did not deprive the defendant of his right under said contract to inspect, approve, accept or reject the merchandise mentioned in said contract."

Judgment was rendered for plaintiffs for $225 and defendants appealed.

1.    The right of plaintiffs to commission depends on whether they found a purchaser on the terms defendants had agreed to accept, and upon this issue there is a wide divergence in the testimony.    As originally drawn, the contract between defendant and Harper, out of which plaintiffs' right must accrue, expressly stated the trade for which it provided was "subject to the inspection and approval of the merchandise by the said first party;" further, that after the goods were approved by the first party, warranty deeds conveying the land were to be placed in the First National Bank of Nevada with authority to deliver the same to Harper when the contract was completed; and also a bill of sale be delivered to the first party on completion of the contract. According to the first of those stipulations, there was no deal until the parties of the first part had approved the goods.    No direct evidence was introduced to prove Elliott was authorized to act as his wife's agent in the transaction, and, indeed, it was not proved whether the lands to be exchanged belonged to her, to him, or to both.    Nevertheless it is fairly inferable he had an agency to this extent at least, to inspect the stock of goods.    She personally executed the written agreement and there is not a trace of proof he had authority to bind her by any change of its terms, or that she ratified the alteration of it.    Yet the court below refused to declare the change did not bind her, and the finding should be in her favor.    Clearly this declaration should have been given, as the evidence stood.

2.    Another important question is whether the contract as altered being good against Mr. Elliott, the court correctly refused to declare it did not deprive Elliott of the right given him in the original instrument to inspect and approve or reject the merchandise.    The alteration did no more than extend the date of the invoice and provide what should occur if the goods in-

voiced over $7,500. After so providing, the amendment declared: "Otherwise this agreement remains as written on opposite side of this sheet." That stipulation left in full force the stipulation in the original, that the deal was subject to inspection and approval of the merchandise by Elliott. Therefore until he inspected and approved, the transaction was not complete, but at his option. The testimony for plaintiffs goes to establish approval and acceptance of the merchandise by Elliott and completion of the transaction by the deposit of the papers with the bank; whereas the testimony for defendants goes to prove Elliott absolutely rejected the stock, claiming it had been falsely represented, and the deposit of papers for the purpose and under the circumstances we have stated.

The judgment is reversed and the cause remanded. All concur.